1

2

3

4

5                  IN THE UNITED STATES DISTRICT COURT

6              FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8   Z.F, a minor, by and through his      )
    parents M.A.F and J.F. and            )   2:10-cv-00523-GEB-JFM
9   M.A.F. and J.F. individually;         )
    L.H., and J.H., minors, by and        )
10  through their parents J.A. and        )   ORDER GRANTING IN PART AND
    J.R.H. and J.A. and J.R.H.            )   DENYING IN PART
11  individually; A.N., a minor, by       )   COUNTERDEFENDANTS' MOTION TO
    and through his parents, G.N.         )   DISMISS; AND DENYING
12  and M.R., and G.N. and M.R.           )   COUNTERDEFENDANTS' ANTI-SLAPP
    individually,                         )   MOTION TO STRIKE
13                                         )
              Plaintiffs, on behalf       )
14            of themselves and all       )
              others similarly            )
15            situated,                    )
                                           )
16        v.                               )
                                           )
17  RIPON UNIFIED SCHOOL DISTRICT          )
    (RUSD); RIPON UNIFIED SCHOOL          )
18  DISTRICT BOARD OF TRUSTEES; SAN       )
    JOAQUIN COUNTY OFFICE OF              )
19  EDUCATION; VALLEY MOUNTAIN            )
    REGIONAL CENTER (VMRC), MODESTO       )
20  CITY SCHOOLS, MODESTO CITY            )
    SCHOOLS BOARD OF EDUCATION,           )
21  RICHARD JACOBS, Executive             )
    Director of VMRC, in his             )
22  official and individual              )
    capacity, TARA SISEMORE-HESTER,      )
23  Coordinator for Autism Services      )
    for VMRC, in her official and        )
24  individual capacity; VIRGINIA        )
    JOHNSON, Director of Modesto         )
25  City Schools SELPA, in her           )
    official and individual              )
26  capacity; SUE SWARTZLANDER,          )
    Program Director for Modesto         )
27  City Schools, in her official        )
    and individual capacity and Does     )
28  1 – 200.,                             )
                                           )

                                1

```
 1                    Defendants.            )
                                             )
 2   _____  )
                                             )
 3   VALLEY MOUNTAIN REGIONAL                )
     CENTER, RICHARD JACOBS and TARA         )
 4   SISEMORE-HESTER                         )
                                             )
 5               Counterclaimants,           )
                                             )
 6        v.                                 )
                                             )
 7   M.A.F. and J.A., SPECIAL NEEDS          )
     ADVOCATES FOR UNDERSTANDING,            )
 8   and AUTISM REFORM CALIFORNIA,           )
                                             )
 9               Counterdefendants.          )
                                             )
10   _____  )
```

Counterdefendants M.A.F., J.A., and Special Needs Advocates For Understanding ("SNAFU") move under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) for dismissal of the Counterclaim brought by Valley Mountain Regional Center ("VMRC"), Richard Jacobs ("Jacobs"), and Tara Sisemore-Hester ("Sisemore-Hester").[1] Counterdefendants also move to strike the claims in the Counterclaim under California's "anti-SLAPP" statute, prescribed in California Civil Procedure Code section 425.16. The Counterclaim alleges libel and slander claims against all Counterdefendants, and a malicious prosecution claim against M.A.F. and J.A.

## I. Allegations in Counterclaim

VMRC is a private, nonprofit entity that contracts with providers of autism treatment services for the purpose of assisting individuals with development disabilities. (Countercl. ¶ 3.) Jacobs is the Executive Director of VMRC. Id. ¶ 4. Sisemore-Hester is the

---

[1]   This matter is deemed suitable for decision without oral argument.  E.D. Cal. R. 230(g).

Coordinator of Autism Services for VMRC. Id. ¶ 5. M.A.F. and J.A. are parents who allege their respective children "were unlawfully denied intensive behavior treatment for Autism Spectrum Disorder." Id. ¶ 18. SNAFU is a private nonprofit organization that states it is "dedicated to improving the lives of children and adults with disabilities." Id. ¶ 6. M.A.F. is a co-founder of SNAFU. Id.

In 2008, M.A.F., J.A., their respective children, and other parents and children filed a complaint in this district against several defendants, including Counterclaimants ("2008 lawsuit"). Id. Ex. A. The complaint in the 2008 lawsuit alleged Counterclaimants violated federal and state law by restricting access to intensive Applied Behavior Analysis ("ABA") services through implementation of the Early Intensive Behavioral Treatment Program, Procedures, and Guidelines ("EIBT/PPG"). Id. Ex. A, ¶ 62. The federal claims alleged against Counterclaimants in the 2008 lawsuit were dismissed for lack of subject matter jurisdiction since Plaintiffs failed to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), and the remaining state claims were dismissed because the Court decided not to continue exercising supplemental jurisdiction over those claims. Z.F. v. Ripon Unified Sch. Dist., et al., ECF No. 75, 2:08-cv-00855, at 12-13 (E.D. Cal. Nov. 7, 2008). The Ninth Circuit affirmed the dismissal. (Countercl. ¶ 19.)

On March 3, 2010, M.A.F., J.A., their respective children, and other parents and their child brought the instant federal court lawsuit. (ECF No. 2). VMRC, Jacobs, and Sisemore-Hester are each named as Defendants. Id. The instant lawsuit alleges that "Defendants have implemented a system under the EIBT/PPG contract which has unlawfully restricted access to intensive ABA services for Plaintiffs, as well as

those similarly situated, in contravention of federal and state law."

(First Am. Compl. ("FAC") ¶ 34.)

## II. Motion to Dismiss - Rule 12(b)(1)

### A.   Subject Matter Jurisdiction

SNAFU argues this Court lacks subject matter jurisdiction over the libel and slander claims alleged against it. Counterclaimants rejoin that since this Court has subject matter jurisdiction over the claims in the original complaint, supplemental jurisdiction exists under 28 U.S.C. § 1367 ("§ 1367") over the libel and slander claims alleged against SNAFU in the Counterclaim. § 1367 prescribes:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). For supplemental jurisdiction to exist over the libel and slander claims in the Counterclaim, the alleged defamatory statements must be "sufficiently related to subject matter of the original action." Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1251 (9th Cir. 1987).

The alleged defamatory statements in the Counterclaim accuse Counterclaimants of illegally implementing the EIBT/PPG. (See Countercl. ¶¶ 25, 27, 30, 32, 37.) The lawfulness of the implementation of the EIBT/PPG is also an issue in claims in Plaintiffs' complaint. For instance, Plaintiffs allege in their complaint that "Defendants have implemented a system under the EIBT/PPG contract which has unlawfully restricted access to intensive ABA services for Plaintiffs." (FAC ¶ 34.) Since each pleading concerns whether the EIBT/PPG was lawfully implemented, the libel and slander claims in the Counterclaim are

sufficiently related to claims in the original complaint. Therefore, supplemental jurisdiction exists over the libel and slander claims against SNAFU under § 1367.

**B.   Joinder of SNAFU**

SNAFU also argues it was not properly joined as a counterdefendant. However, Rule 13 permits joinder of parties to a counterclaim if joinder was under Rule 20. See Fed. R. Civ. P 13(h) (stating that Rule 20 "govern[s] the addition of a person as a party to a counterclaim or crossclaim"). Under Rule 20, parties may be joined as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A-B). Since the libel and slander claims are based on allegedly defamatory statements concerning implementation of the EIBT/PPG, SNAFU has not shown it was improperly joined.

**III. Motion to Dismiss - Rule 12(b)(6)**

**A.   Legal Standard**

To avoid dismissal under Rule 12(b)(6), a plaintiff must have alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Moss v. United

1  States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal,

2  129 S. Ct. at 1951).

3          In analyzing whether a claim has facial plausibility, "[w]e

4  accept as true all well-pleaded allegations of material fact, and

5  construe them in the light most favorable to the non-moving party."

6  Daniels-Hall v. Nat'l Educ. Ass'n, --- F.3d ----, 2010 WL 5141247, at *3

7  (9th Cir. 2010). However, "the tenet that a court must accept as true

8  all of the allegations contained in a complaint is inapplicable to legal

9  conclusions." Iqbal, 129 S. Ct. at 1949. "A pleading that offers 'labels

10 and conclusions' or 'a formulaic recitation of the elements of a cause

11 of action will not do.' Nor does a complaint suffice if it tenders

12 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

13 (quoting Twombly, 550 U.S. at 555, 557).

14         "In sum, for a complaint to survive a motion to dismiss, the

15 non-conclusory 'factual content,' and reasonable inferences from that

16 content, must be plausibly suggestive of a claim entitling the plaintiff

17 to relief." Moss, 572 F.3d at 969 (quoting Twombly, 550 U.S. at 557).

18 **B.   Malicious Prosecution Counterclaim**

19         M.A.F. and J.A. seek dismissal of Counterclaimants' malicious

20 prosecution claim. This claim is based on the 2008 lawsuit. M.A.F. and

21 J.A. argue this claim fails to allege the 2008 lawsuit "was pursued to

22 a legal termination" in Counterclaimants' favor. Under California law:

23         To establish a cause of action for the malicious
           prosecution of a civil proceeding, a plaintiff must
24         plead and prove that the prior action (1) was
           commenced by or at the direction of the defendant
25         and was pursued to a legal termination in his,
           plaintiff's, favor; (2) was brought without
26         probable cause; and (3) was initiated with malice.

27 Bertero v. Nat'l Gen. Corp., 13 Cal. 3d 43, 50 (1974) (internal

28 citations omitted). "In order for the termination of a lawsuit to be

considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action . . . ." <u>Pender v. Radin</u>, 23 Cal. App. 4th 1807, 1814 (1994).

The federal claims alleged against Counterclaimants in the 2008 lawsuit were dismissed for lack of subject matter jurisdiction since administrative remedies were not exhausted.  This "dismissal . . . for lack of jurisdiction [was] not on the merits [since] it is unreflective of the merits." <u>Lackner v. LaCroix</u>, 25 Cal. 3d 747, 750 (1979) (internal citations omitted).  Therefore, Counterclaimants have not stated a plausible claim for malicious prosecution based on the 2008 lawsuit, and M.A.F. and J.A.'s motion to dismiss this claim is granted.

**C.   Libel Counterclaim**

Counterdefendants seek dismissal of Jacobs and Sisemore-Hester's libel claim, arguing that neither Jacobs nor Sisemore-Hester has adequately pled that the allegedly libelous statements defame them.

To state a libel claim under California law, a party must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." <u>Scott v. Solano Cnty. Health and Soc. Servs. Dept.</u>, 459 F. Supp. 2d 959, 973 (E.D. Cal. 2006) (quoting <u>Smith v. Maldonado</u>, 72 Cal. App. 4th 637, 645 (1999)).

Jacobs and Sisemore Hester's libel claim is based on three internet postings. Jacobs and Sisemore-Hester allege the following statements posted on the Autism Reform California website are libelous:

> EIBT is only offered to elite autistic children. . . . Autism agencies wishing to set up business within this region must agree to implement and enforce these criteria, which are outlined in a 53-page policy formerly known as 'Region 6 Early Intensive Behavioral [sic] Treatment 4-Way Agreement'. Several agencies who attempted to apply for vendorization with Valley Mountain Regional

1   Center, who disagreed to this policy were not
    allowed to open their business here, continuing to
2   limit autism business operations and financial
    disbursements of public autism monies to five
3   autism agencies.

4   VMRC's autism coordinator confirmed on the record
    that attendance to an EIBT meeting is by invitation
5   only. To date, publicly funded EIBT meetings are
    not publicly disclosed and are held discreetly.
6
    Public and private agencies, namely Valley Mountain
7   Regional Center (VMRC), San Joaquin SELPA,
    Stanislaus SELPA, Family Resource Network, and four
8   autism agencies . . . collaborated on the
    development of an autism service delivery model
9   that discriminates against children through the
    policy's entrance, continuation, and exit criteria.
10  . . . VMRC's autism coordinator, Tara
    Sisemore-Hester has been audio recorded in an IEP
11  meeting to say that she is the 'gatekeeper' of EIBT
    and indicated on record that every kid who gets
12  EIBT goes through her desk. . . .[T]he EIBT PP & G
    policy and its autism service delivery model
13  violates federal and state special education laws
    and regulations and violates parents and children's
14  U.S. Constitutional Rights under Equal Protections
    [sic].
15
    To date, this illegal criteria continues to be
16  implemented against children to support the selfish
    interests of agencies and their representatives: to
17  pay for expensive intensive ABA treatment to only
    those children who, according to Dr. Kludt, would
18  'make it . . . .' Tara Sisemore-Hester offered this
    irrelevant but interesting piece of information
19  during an Autism Connection meeting (and at several
    IEP meetings) saying that Non Public Agencies. .
20  .stand to 'make a lot of money' through this
    collaborative service model. . . . While rumors
21  continue that EIBT and other VMRC services are
    lucrative for VMRC contracted providers, and while
22  we may call for an investigation into the possible
    misappropriation of state and federal funds, Autism
23  Reform California's primary focus is to alert the
    public about the EIBT's illegal provisions as it
24  continues to operate underhandedly and outside the
    legal IEP process, and rally support to end its
25  existence through the legal process.

26  (Countercl. ¶ 30; Ex. E.)

27          Jacobs and Sisemore-Hester also allege the following

28  statements posted on the Autism Reform California website are libelous:

As a green but passionate parent of a newly-diagnosed son with autism experienced the deceptive implementation of an autism policy known as The 4 Way Agreement, she launched a website to report on the discriminatory provisions contained in the 53-page contract that she was being required to sign if she wanted her son to enter into the intensive EIBT program. . . . After a settlement agreement and the filing of the original class action lawsuit, the parents on behalf of their son with autism survived a 9th Circuit Court of Appeals decision, which, while affirming the District Courts [sic] decision regarding students who did not exhaust their administrative claims, in fact allowed those parents who did exhaust, either by settlement or by hearing, to pursue additional claims in federal court. The resulting 2010 amended class action complaint was amended and filed.

One of the major concerns among parents and caregivers involves nepotism and misuse of government monies. VMRC's autism coordinator of services Tara Sisemore-Hester has gone on record many times to remind families that NPA's (Non Public Agencies) stand to make a lot of money in the EIBT cofunded supposedly collaborative model of intensive autism treatment program known as "EIBT" which offers 35-40 hours of one-to-one intervention. . . . Many parents and caregivers believe . . . that it is high time for Federal and State investigators and lawyers to look into the matter, request for all accounting documentation, and investigate the nepotistic transfer of EARLY START and EIBT public dollars that seems to be making a lot of money for ABA Agencies CVAP, Pathways, B.E.S.T. per Ms. Tara Sisemore-Hester's comment.

Id. ¶ 32; Ex. F.

Jacobs and Sisemore-Hester also allege the following statements posted on SNAFU's website are libelous:

While the question of legality is left up to attorneys and courts, you should be aware that a 2008 due process decision found the EIBT PP&G in conflict with the federal law IDEA on several points. . . . You should also know that a class-action lawsuit has been filed in the Eastern District of the Federal Court regarding EIBT and how it has harmed children. SNAFU is not a party to this lawsuit. However, many SNAFU children have been harmed by the criteria and politics of the EIBT program.

You should also know that some providers and VMRC have attached additional criteria such as Therapeutic Pathways/Kendall School observation policy released in July 2009 which includes a policy that, on its face, is retaliatory in nature. Specifically it states that if a parent has made a complaint about the program, Therapeutic Pathways/Kendall school can have their attorney present for your parental observation. Some parents have reported they are no longer allowed inside the Kendall School building and must pick up and drop off their children outside the classroom. Parents may wish to explore their feelings about leaving their children in a place they are not allowed to observe and/or observe under very strict guidelines.

We know of many children and their parents who were not even told about the existence of EIBT. We know of parents that were talked out of the program ('oh, that program is a much more restrictive program than the county autism program), your child doesn't qualify for this program, there is a waiting list (or interest list), etc. One VMRC staff person has repeatedly indicated she controls who gets EIBT and who doesn't. . . . This is incorrect. . . . If an authority figure at VMRC touts she controls who gets EIBT and who doesn't, that flies directly in the face of this comment. Additionally, many parents have reported that they were not given the full continuum of placement options to consider. And even if they were, signing the 53-page PP&G document was a requirement for their child to receive ABA therapy. By removing choices, the 'types of intervention children would receive' was limited and parents were not given enough information and options to make fully-informed decisions.

Id. ¶ 37; Ex. G.

Counterdefendants argue that Jacobs' libel claim should be dismissed because the allegedly libelous statements do not refer to Jacobs by name. However, "[u]nder California law, '[t]here is no requirement that the person defamed be mentioned by name. . . . It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff . . . [or] if the publication points to the plaintiff by description or circumstance tending to identify him.'" Church of Scientology of California v. Flynn, 744 F.2d 694, 697

(9th Cir. 1984) (quoting <u>DiGiorgio Fruit Corp. v. AFL-CIO</u>, 215 Cal. App. 2d 560, 569-70 (1963)). Here, the allegedly libelous statements make several references to VMRC and actions VMRC took. Although Jacobs is not mentioned by name in the statements, the Counterclaim alleges that Jacobs is the Executive Director of VMRC and is responsible for overseeing all aspects of VMRC's operations. (Countercl. ¶ 4.) The Counterclaim also alleges the statements were made "of and concerning Counterclaimants and were so understood by those who read the publication." <u>Id.</u> ¶ 43. Therefore, the Counterclaim sufficiently alleges that the statements defame Jacobs.

Counterdefendants also argue that Sisemore-Hester has not sufficiently pled that the allegedly libelous statements defame her. However, Sisemore-Hester is also alleged to be an employee of VMRC. <u>Id.</u> ¶¶ 5. Further, some of the allegedly libelous statements specifically identify Sisemore-Hester by name. <u>Id.</u> Exs. E, F. Therefore, the Counterclaim also sufficiently alleges that the statements defame Sisemore-Hester. Accordingly, this portion of the dismissal motion is denied.

Counterdefendants also argue that the libel claim should be dismissed because the alleged defamatory statements are statements of opinion, as opposed to statements of fact. "[P]ublications which are statements of opinion rather than fact cannot form the basis for a libel action." <u>Campanelli v. Regents of Univ. of California</u>, 44 Cal. App. 4th 572, 578 (1996). "The critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court . . . . If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." <u>Id.</u> However, Counterdefendants' dismissal motion

does not contain discussion about which statements are statements of opinion. Although this issue was developed in Counterdefendants' reply brief, "[t]he district court need not consider arguments raised for the first time in a reply brief." <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007). Since the Counterdefendants failed to timely notice this portion of their motion by discussing what they opine are opinion statements, this portion of their arguments are disregarded.

**D. Slander Counterclaim**

Counterdefendants also seek dismissal of Counterclaimants' slander claim. Counterdefendants argue that two of the three allegedly slanderous statements cannot support a slander claim because there is no indication that Counterdefendants are responsible for publishing the statements. Counterdefendants argue the third allegedly slanderous statement is barred by the statute of limitations.

The requirements for stating a slander claim are the same for stating a libel claim, meaning a plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." <u>Scott</u>, 459 F. Supp. 2d at 973.

**1. DeVelbiss Email**

Counterdefendants argue that an alleged email sent from a person named Gabriela DeVelbiss ("DeVelbiss") to Sisemore-Hester is insufficient to support a slander claim because the email does not indicate that any of the Counterdefendants are responsible for publishing the email. The DeVelbiss email states:

Tara,

Please forward this email to Janie Vizzolini or whomever it needs to go. I will reiterate that I do not need anyone to attend my son's [Individual Education Plan] meeting from VMRC. Please provide

1    the law that 'requires' someone from VMRC to
     attend. I believe this may only be a VMRC policy
2    and one that is under scrutiny as part of the EIBT
     class-action lawsuit. IDEA indicates that between
3    the ages of 3 and 22, the school district is
     responsible for my son's education. Funding is not
4    me or my son's concern as IDEA also indicates a
     child must receive a FAPE regardless of funding,
5    personnel, availability, waiting lists, etc. I
     appreciate your concern, however. You probably are
6    already aware that I have revoked consent to
     release information between the school district and
7    VMRC as well as Kendall School and VMRC. If VMRC
     needs any documentation regarding my son's
8    education, please put your request in writing to
     me.
9
     Again, please forward this email to whomever needs
10   to be notified that their presence is unnecessary.
     Should someone from VMRC show up at the IEP meeting
11   against my wishes, they will be asked to leave. I
     am copying my son's school district on this email
12   as well so they are aware of the situation and the
     non-necessity of VMRC's attendance at the IEP
13   meeting. Thank you.

14   Love, Gabby :0)

15   Id. Ex. B.

16        Counterclaimants rejoin arguing that the email supports their

17   slander claim since they allege that "M.A.F. and/or J.A. is aligned with

18   and acting in concert with DeVelbiss, and further, that M.A.F. and/or

19   J.A. made false and defamatory statements regarding Counterclaimants to

20   DeVelbiss to induce her to criticize and refuse to cooperate with VMRC."

21   (Countercl. ¶ 22.) However, the allegations that M.A.F. and/or J.A. are

22   "aligned with and acting in concert with DeVelbiss" and that M.A.F.

23   and/or J.A. "induce[d] [DeVelbiss] to criticize and refuse to cooperate

24   with VMRC" are "naked assertion[s]" that are not entitled to a

25   presumption of truth. Twombly, 550 U.S. at 557. Moreover,

26   Counterclaimants have not provided "non-conclusory 'factual content,'"

27   supporting their bare allegation that M.A.F. and/or J.A. "induced"

28   DeVelbiss to do what is alleged. Moss, 572 F.3d at 969. Therefore, the

DeVelbiss email does not support a plausible slander claim against Counterdefendants, and this portion of the slander claim is dismissed.

### 2. Examiner.com Article

Counterdefendants also argue that alleged statements posted on the website Examiner.com are insufficient to support the slander claim because the statements in the article were made by a parent named Laura Jones, who is not a party to the Counterclaim. However, at the end of the Examiner.com article is the statement: "To read more about EIBT, the class-action lawsuit, the studies, etc., please visit our website at http://www.valleysnafu.com/EIBT.htm" and "[i]f you are a family of a child with autism who resides in the Modesto/Stockton area, please visit [the SNAFU website] to find out if your childs [sic] rights to service have been violated." (Countercl. Ex. C.) Since SNAFU's website is referenced in the Examiner.com article, it is reasonable to infer that SNAFU and M.A.F. (who is alleged to be a founder of SNAFU) are responsible for posting the article.

However, the Examiner.com article makes no reference to J.A., and the Counterclaim contains no additional allegation referencing J.A.'s involvement in posting the Examiner.com article. Therefore, Counterclaimants' motion to dismiss this portion of the slander claim is granted as to J.A, but denied as to SNAFU and M.A.F.

### 3. Recordnet.com Article

Further, Counterdefendants argue that California's one year statute of limitations bars the portion of the slander claim based on statements posted on the website Recordnet.com. Counterclaimants allege in this claim that the Recordnet.com article was "published" on "December 24, 2005." (Countercl. ¶ 26.) The Counterclaim was not filed until the year 2010. Therefore, since the statements in the

14

1   Recordnet.com article are alleged to have been published more than one
2   year before the slander claim was filed, this portion of the slander
3   claim is time-barred.

4   **E.   Claims by VMRC**

5           Counterdefendants argue VMRC may not maintain an action for
6   libel or slander because VMRC is a government entity. However, the
7   Counterclaim does not allege that VMRC is a government entity; instead,
8   the Counterclaim alleges VMRC is a private nonprofit entity. (Countercl.
9   ¶ 3.) Nonprofit entities are permitted to maintain libel and slander
10  claims. See 5 B.E. Witkin, Summary of California Law, § 532 (10th ed.)
11  ("A nonprofit corporation that relies on financial support from the
12  public may . . . be defamed by something that prejudices it in the
13  estimation of the public."). Therefore, this portion of the dismissal
14  motion is denied.

15          Counterdefendants also argue that VMRC's libel and slander
16  claims should be dismissed because VMRC has not provided factual
17  allegations, other than conclusory statements, that it suffered damages
18  as a result of the allegedly libelous and slanderous statements. But
19  under California law, damages are presumed to exist if a party has
20  established "libel per se" or "slander per se." See Walker v. Kiousis,
21  93 Cal. App. 4th 1432, 1441 (2001) (stating libel per se "is actionable
22  without proof of special damages"); Burdette v. Carrier Corp., 158 Cal.
23  App. 4th 1668, 1693 (2008) ("Damages are presumed so that a cause of
24  action is conclusively established from the false and unprivileged
25  utterance constituting slander per se."). Counterdefendants have not
26  addressed whether the allegedly libelous and slanderous statements are
27  libel per se or slander per se. Therefore, this portion of
28  Counterdefendants' dismissal motion is denied.

**F.    Leave to Amend**

M.A.F. and J.A. request that the malicious prosecution claim be dismissed without leave to amend. Additionally, Counterdefendants request that the dismissed portions of the slander claim be dismissed without leave to amend. When deciding whether "to grant leave to amend . . . the district court . . . 'ascertain[s] the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting William O. Gilley Enters. v. Atl. Richfield Co., 588 F.3d 659, 669 n.8 (9th Cir. 2009)). Counterdefendants have not explained how any of these factors justifies dismissing the malicious prosecution claim and the dismissed portions of the slander claim with prejudice. Therefore, the malicious prosecution claim and the dismissed portions of the slander claim are dismissed with leave to amend.

Further, M.A.F. and J.A. seek to strike the malicious prosecution claim under California's anti-SLAPP statute. However, reaching the merits of M.A.F. and J.A.'s anti-SLAPP motion before Counterclaimants could amend their malicious prosecution claim would "directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." Verizon Delaware Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004) (upholding district court's decision to allow amendment of complaint before reaching anti-SLAPP motion). Therefore, this portion of M.A.F. and J.A.'s anti-SLAPP motion is denied.

**IV. Motion to Strike - Cᴀʟ. Cɪᴠ. Pʀᴏᴄ. Cᴏᴅᴇ § 425.16**

Counterdefendants seek to have stricken Counterclaimants' libel and slander claims under California's anti-SLAPP statute. The anti-SLAPP statute "provide[s] a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." Rusheen

1   v. Cohen, 37 Cal. 4th 1048, 1055-56 (2006). The anti-SLAPP statute

2   prescribes:

3           A cause of action against a person arising from any
        act of that person's right of petition or free
4       speech under the United States Constitution in
        connection with a public issue shall be subject to
5       a special motion to strike, unless the court
        determines that the plaintiff has established that
6       there is a probability that the plaintiff will
        prevail on the claim.

7

8   CAL. CIV. PROC. CODE § 425.16(b)(1). The California Supreme Court has

9   explained the process for evaluating an anti-SLAPP motion as follows:

10          Resolution of an anti-SLAPP motion requires the
        court to engage in a two-step process. First, the
11      court decides whether the defendant has made a
        threshold showing that the challenged cause of
12      action is one arising from protected activity. The
        moving defendant's burden is to demonstrate that
13      the act or acts of which the plaintiff complains
        were taken in furtherance of the defendant's right
14      of petition or free speech under the United States
        or California Constitution in connection with a
15      public issue, as defined in the statute. (§ 425.16,
        subd. (b)(1).) If the court finds such a showing
16      has been made, it then determines whether the
        plaintiff has demonstrated a probability of
17      prevailing on the claim.

18  Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 733 (2003) (internal

19  quotation marks omitted).

20          Counterdefendants argue in their anti-SLAPP motion to strike

21  the libel and slander claims that these claims are legally deficient.

22  Since the "anti-SLAPP motion is based on legal deficiencies in the

23  complaint, a federal court must determine the motion in a manner that

24  complies with the standards set by Federal Rules 8 and 12." Bulletin

25  Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172,

26  1180 (C.D. Cal. 2006) (internal quotation marks omitted).

27          Assuming that the challenged claims arise from protected

28  activity, Counterdefendants argue that the Counterclaimants have not

1   shown a probability of success on the merits since Counterclaimants are

2   "limited purpose public figures" and they have not satisfied the

3   heightened pleading requirements applicable to limited purpose public

4   figures. "[I]n contrast to a public official or an all-purpose public

5   figure, either of whom must always meet the actual malice standard, a

6   'limited-purpose public figure,' one who has 'thrust [himself] to the

7   forefront of particular public controversies in order to influence the

8   resolution of the issues involved,' must show actual malice only when

9   alleging defamation with regard to the particular controversy into which

10   he has inserted himself." Hatfill v. The New York Times Co., 532 F.3d

11   312, 318 (4th Cir. 2008) (quoting Gertz v. Robert Welch, Inc., 418 U.S.

12   323, 345 (1974)).

13        Counterdefendants have not shown that Counterclaimants have

14   "thrust themselves into the forefront" of the issues mentioned in the

15   allegedly defamatory statements. "A private individual is not

16   automatically transformed into a public figure just by becoming involved

17   in or associated with a matter that attracts public attention." Wolston

18   v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 167 (1979). "A libel

19   defendant must show more than mere newsworthiness to justify application

20   of the demanding burden of [pleading the heightened actual malice

21   standard]." Id. at 167-68. Therefore, this portion of Counterdefendants'

22   anti-SLAPP motion is denied.

23        Counterdefendants' remaining arguments in support of their

24   anti-SLAPP motion to strike the libel and slander claims are identical

25   to the arguments Counterdefendants made in their Rule 12(b)(6) motion to

26   dismiss these claims. Since the libel claim and a portion of the slander

27   claim have survived that dismissal motion, Counterclaimants have shown

28   these claims do not lack merit. See Haight Ashbury Free Clinics, Inc. v.

1  Happening House Ventures, 184 Cal. App. 4th 1539, 1554 (2010) ("[O]nce

2  a plaintiff shows a probability of prevailing on any part of its claim,

3  the plaintiff has established that its cause of action has some merit

4  and the entire cause of action stands."). Therefore, this portion of

5  Counterdefendants' anti-SLAPP motion is also denied.

6                              **IV. Conclusion**

7          For the stated reasons, Counterdefendants' dismissal motion is

8  granted in part and denied in part, and their anti-SLAPP motion is

9  denied. The precise rulings are as follows:

10          1.   M.A.F. and J.A.'s request to dismiss Counterclaimants'

11  malicious prosecution claim is granted.

12          2.   Counterdefendants' request to dismiss Counterclaimants'

13  libel claim is denied.

14          3.   Counterdefendants' request to dismiss Counterclaimants'

15  slander claim is granted, except as to the statements in the

16  Examiner.com article, to which this request is granted as to J.A. but

17  denied as to M.A.F. and SNAFU.

18          4.   Counterdefendants' anti-SLAPP motion to strike is denied.

19  Dated:  February 2, 2011

20

21          _____
            GARLAND E. BURRELL, JR.
22          United States District Judge

23

24

25

26

27

28