1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   Z.F., a minor, by and through his parents          No.  10-cv-00523-TLN-CKD
     M.A.F. and J.F. and M.A.F. and J.F.
12   individually; L.H., and J.H., minors by and
     through their parents J.A. and J.R.H. and
13   J.A. and J.R.H. individually; A.N, a minor         **ORDER**
     by and through his parents , G.N. and M.R.
14   and G.N. and M.R. individually,

15                         Plaintiffs,

16        v.

17   RIPON UNIFIED SCHOOL DISTRICT,
     RIPON UNIFIED SCHOOL DISTRICT
18   BOARD OF TRUSTEES, SAN JOAQUIN
     COUNTRY OFFICE OF EDUCATION,
19   VALLEY MOUNTAIN REGIONAL
     CENTER, MODESTO CITY SCHOOLS,
20   MODESTO CITY SCHOOLS BOARD OF
     EDUCATION, RICHARD JACOBS,
21   Executive Director of VMRC, in his
     official and individual capacity,  TARA
22   SISEMORE-HESTER,  Coordinator for
     Autism Services for VMRC, in her official
23   and individual capacity, VIRGINIA
     JOHNSON, Director of Modesto City
24   Schools SELPA, in her official and
     individual capacity, SUE
25   SWARTZLANDER, Program Director for
     Modesto City Schools, in her official and
26   individual capacity, and DOES 1-200 ,

27                         Defendants.

28

                                      1

1   | VALLEY MOUNTAIN REGIONAL
2   | CENTER, RICHARD JACOBS, and
    | TARA SISEMORE-HESTER,
3   |                 Counterclaimants,
4   |         v.
5   | M.A.F. and SPECIAL NEEDS
6   | ADVOCATES FOR UNDERSTANDING,
7   |                 Counterdefendants.

8

9       This matter is before the Court on Counterdefendants J.A.[1] and M.A.F.'s (jointly

10  "Counterdefendants") Motion for Summary Judgment or For Partial Summary Judgment (ECF

11  No. 258).  Counterclaimants Valley Mountain Regional Center ("VMRC"), Tara Sisemore-

12  Hester, and Richard Jacobs (jointly "Counterclaimants") oppose the motion.  (ECF No. 263.)

13  Counterdefendants filed a reply.  (ECF No. 276.)  Having reviewed the briefing filed by both

14  parties and for the reasons stated below, the Court hereby GRANTS IN PART and DENIES IN

15  PART Counterdefendants' Motion for Summary Judgment (ECF No. 258).

16      **I.      FACTUAL AND PROCEDURAL BACKGROUND**

17      Plaintiffs are three families suing four defendant agencies for disability services.  (Compl.,

18  ECF No. 1.)  Plaintiffs along with other families sued in an earlier action entitled *Z.F., et al. v.*

19  *Ripon Unified School District, et al.*, 2:08-cv-00855-GEB-JFM.  In that action, Plaintiffs brought

20  claims similar to the instant action.  However, the Court dismissed the action because it found

21  some Plaintiffs had not exhausted their administrative remedies.  Plaintiffs who had exhausted

22  their administrative remedies were permitted to refile in this action.  Plaintiffs allege Defendants

23  violated the IDEA, Rehabilitation Act, Americans with Disabilities Act and the Unruh Act.  (*See*

24  ECF No. 1.)  During the pending litigation, Defendants VMRC, Tara Sisemore-Hester, and

25  Richard Jacobs allege that Counterdefendants made libelous and slanderous statements against

26  them in the form of interviews with reporters and postings to autism reform websites.[2]

27  ――――――――――――――
    [1]       Counterdefendants and Counterclaimants stipulated to the voluntary dismissal of the counterclaims against
28  J.A.  (ECF No. 262.)  Therefore, the Court will review the motion as it pertains solely to M.A.F.
    [2]       The allegedly defamatory statements are lengthy and therefore the Court will address only the necessary

1  (Counterclaims, ECF No. 21.)  Counterclaimants filed three counterclaims for libel, slander and

2  malicious prosecution arising from statements allegedly made by M.A.F. on the SNAFU website

3  and to the media.  (*See* ECF No. 21.)

4          Counterdefendants filed a Motion to Dismiss (ECF No. 35) on August 2, 2010.  In the

5  Court's order dated February 2, 2011, the Court denied in part and granted in part

6  Counterdefendants' motion.  (ECF No. 111.)  The Court dismissed the malicious prosecution

7  counterclaim and Counterclaimants did not reassert it.  After completion of discovery,

8  Counterdefendants filed the instant motion for summary judgment on November 13, 2014.  (ECF

9  No. 261.)

10        **II.        STANDARD OF LAW**

11         Summary judgment is appropriate when the moving party demonstrates no genuine issue

12  as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

13  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

14  judgment practice, the moving party always bears the initial responsibility of informing the

15  district court of the basis of its motion, and identifying those portions of "the pleadings,

16  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

17  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

18  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

19  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

20  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

21  324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party

22  who does not make a showing sufficient to establish the existence of an element essential to that

23  party's case, and on which that party will bear the burden of proof at trial.

24         If the moving party meets its initial responsibility, the burden then shifts to the opposing

25  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

26  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

27  *Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual

28  parts discussed below.

3

1   dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

2   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

3   support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

4   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

5   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

6   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

7   the nonmoving party.  *Id.* at 251–52.

8          In the endeavor to establish the existence of a factual dispute, the opposing party need not

9   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

10  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

11  trial."  *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to

12  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

13  trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

14  amendments).

15         In resolving the summary judgment motion, the court examines the pleadings, depositions,

16  answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

17  R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

18  of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

19  facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

20  at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

21  obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

22  *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

23  1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

24  "must do more than simply show that there is some metaphysical doubt as to the material facts."

25  *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of

26  fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

27  ///

28  ///

4

III.   ANALYSIS

With the exception of two arguments, the Court does not reach the merits of Counterdefendants' remaining arguments.  As discussed below, Counterdefendants or Counterclaimants have failed to meet their burden on a motion for summary judgment. Counterdefendants first argue that Counterclaimants Tara Sisemore-Hester and Richard Jacobs are public officials and therefore must establish that the allegedly defamatory statements were made with actual malice.  Additionally, Counterdefendants' statements could be construed as asserting that VMRC is also a public official for the purposes of a defamation action.  The Court turns to this analysis before turning to the arguments brought against each individual counterclaim.

A.   Counterclaimants are not public officials

Counterdefendants assert that Counterclaimants are public officials and therefore must demonstrate actual malice to succeed on their defamation claims.  (ECF No. 261 at 4.) Counterclaimants argue that the Court already determined that Counterclaimants are not pubic officials.  (ECF No. 263 at 8.)  However, the Court's previous order dealt with the issue of limited pubic figures, which is distinct from public officials.  The elements Counterclaimants must establish to succeed on claims of libel and slander turns on the determination of whether they are considered public officials.

Under California law, whether someone is a public official is determined by federal standards.  *Rosenblatt v. Baer*, 383 U.S. 75, 84 (1966).  A person qualifies as a public official if they:

> "(1) [have], or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs; (2) usually enjoys significantly greater access to the mass media and therefore a more realistic opportunity to contradict false statements than the private individual; (3) holds a position in the government which has such apparent importance that the public has an independent interest in the person's qualifications and performance beyond the general public interest in the qualifications and performance of all government employees; and (4) holds a position which invites public scrutiny and discussion of the person holding it entirely apart from the scrutiny and discussion occasioned by the particular controversy."

5

1   *Mosesian v. McClatchy Newspapers*, 205 Cal. App. 3d 597, 608–09 (1988).

2          "The 'public official' designation applies at the very least to those among the hierarchy of

3   government employees who have, or appear to the public to have, substantial responsibility for or

4   control over the conduct of governmental affairs." *Rosenblatt*, 383 U.S. at 85.  California courts

5   do not consider "government employment a dispositive factor in resolving the issue of public

6   official status." *Ghafur v. Bernstein*, 131 Cal. App. 4th 1230, 1239 (2005).  "[T]he touchstone of

7   public official status is the extent to which the plaintiff's position is likely to attract or warrant

8   scrutiny by members of the public." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1611 (1991).  The

9   scrutiny may be caused by the prominence of the position or the duties of the position tend to

10   naturally have a large or dramatic impact on members of the public.  *Id.*

11                      *i.    Counterclaimant VMRC*

12          Counterdefendants assert that VMRC is a private entity that "performs a role typically

13   reserved for governmental entities."  (ECF No. 261 at 4.)  Counterdefendants argue that a person

14   need not be employed by a government entity to be considered a public official.  (ECF No. 261 at

15   4.)  Counterclaimants do not address whether VMRC is a public official.  However,

16   Counterdefendants do not cite any case law that would suggest that an entity, non-profit or

17   governmental, may be considered a person such that a Court may hold that they are a person who

18   constitutes a public official.  Likewise, the Court conducted an independent search and cannot

19   identify a case that precisely resolves this question.  Without Counterdefendants providing case

20   analysis, the Court declines to extend the term "public official" to encompass not only persons,

21   but entities as well.  Accordingly, the Court finds that VMRC is not a public official for the

22   purposes of this lawsuit.

23                      *ii.    Counterclaimant Tara Sisemore-Hester*

24          Counterdefendants argue that Sisemore-Hester, in her position of coordinator of Autism

25   Services for VMRC, was charged with substantial responsibility that impacted "thousands of

26   children seeking ABA services."  (ECF No. 261 at 5.)  Counterdefendants assert that Sisemore-

27   Hester kept an interest list and directed subordinates to convene meetings to initiate ABA

28   services.  (ECF No. 261 at 4–5.)  Counterclaimants assert that Sisemore-Hester did not have

1   sufficient control over the services provided to children to subject Sisemore-Hester to the public

2   official standard.  (ECF No. 263 at 12.)

3         Counterdefendants rely on *Kahn* to argue that Sisemore-Hester's control and duties were

4   sufficient to qualify her as a public official.  *Kahn*, 232 Cal. App. 3d at 1611–13.  In *Kahn*, the

5   appellate court held that the work plaintiff did as a social worker included considerable power to

6   affect the lives of children and her decision directly determined the type of care and educational

7   services children with disabilities would get.  *Id.* at 1611.  In comparison, Counterdefendants note

8   that Sisemore-Hester kept an interest list and "made the determination to 'direct' service

9   coordinators to convene the appropriate meeting."  (ECF No. 261 at 5.)  However, as

10  Counterclaimants argue, Counterdefendants misrepresent the testimony provided by Sisemore-

11  Hester in her deposition when reaching these conclusions about her duties.  (ECF No. 263 at 13.)

12        Counterdefendants and Counterclaimants both interpret the same portion of Sisemore-

13  Hester's deposition to reach opposite and conflicting views.  However, the parties do not dispute

14  the underlying accuracy or authenticity of her statements.  The testimony at issue in Sisemore-

15  Hester's deposition is that "if service coordinators asked — said a parent might be interested in an

16  EIBT program, if the child was under three, I directed the service coordinator to direct the family

17  to call an IFSP meeting so the needs could be determined.  If the child was over three, I directed

18  the service coordinator to call and IPP [sic] meeting."  (Deposition of Tara Sisemore-Hester at

19  25:25–26:6)  Having reviewed the statement, the Court finds that Counterdefendants' reading is

20  an overstatement of the facts.  The Court can best describe Sisemore-Hester as a gatekeeper who

21  when told of a family's interest in ABA services guides the appropriate person to call a meeting

22  to determine placement.

23        Unlike the social worker in *Kahn*, Sisemore-Hester does not possess considerable power

24  by which her "decisions directly and often immediately determined whether the educational,

25  social, medical and economic needs of developmentally disable children in her care would

26  adequately be met."  *Kahn*, 232 Cal. App. 3d at 1611.  At most Sisemore-Hester's testimony

27  suggests she started the process by which children could gain services and placements.  However,

28  she did not determine the appropriate placements, which services to offer, or when those services

1    and placements would begin.  She explained that "[f]or a child to be in a program, there would

2    have to be an opening obviously.  Once the district offered that as FAPE, we would have co-

3    funded."  (Deposition of Tara Sisemore-Hester at 39: 14–16)  Thus, those decisions were made by

4    the school districts and were subject to outside factors such as openings in placement centers.

5        The two instances of control Counterdefendants reference — her interest list and directing

6    service coordinators to call meetings or tell parents to call meetings — are insufficient for this

7    Court to find that the Sisemore-Hester's duties have a large or dramatic impact on the public.

8    Accordingly, Sisemore-Hester is not a public official for the purposes of defamation law and

9    Counterclaimants do not need to demonstrate actual malice.

10                    *iii.*    *Counterclaimant Richard Jacobs*

11        Counterdefendants only argument is that Jacobs is a public figure because he is "the

12    Executive Director of VMRC held a position of sufficient visibility and stature to constitute a

13    public official."  (ECF No. 261 at 5.)  Counterdefendants do not offer any evidence or case law in

14    support of this statement.  In their reply, and for the first time, Counterdefendants assert that

15    Jacobs' role as executive director "is analogous to the role of a superintendent of a school

16    system."  (ECF No. 276 at 5.)  However, since a party may not raise new arguments in their reply,

17    the Court disregards this argument. Counterdefendants have failed to meet their burden of

18    showing that Richard Jacobs is a public official who must demonstrate actual malice to bring

19    claims for libel and slander.  Accordingly, Counterclaimants are not required to demonstrate

20    actual malice to succeed on their claims for libel and slander.  Having concluded that VMRC,

21    Sisemore-Hester, and Jacobs are not public officials, the Court now turns to a discussion of

22    Counterdefendants' arguments regarding the individual counterclaims.

23            B.  Counterclaim 1: Libel

24        Counterdefendants assert that the allegedly defamatory statements are matters of opinion

25    and are not provably false.  (ECF No. 261 at 10–12.)  Counterclaimants argue that there is a

26    triable issue of facts as to whether the statements are "defamatory false statements of fact."  (ECF

27    No. 263 at 15.)

28        To state a claim for libel under California law, a party must establish "the intentional

1    publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure

2    or which causes special damage." *Scott v. Solano Cnty. Health and Soc. Servs. Dept.*, 459 F.

3    Supp. 2d 959, 973 (E.D. Cal. 2006) (quoting *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645

4    (1999)).  "[T]he truth of the offensive statements or communication is a complete defense against

5    civil liability, regardless of bad faith or malicious purpose."  *Smith*, 72 Cal. App. 4th at 646.

6    Generally, the burden is on the defendant to demonstrate the truth of the statements.  *Lipman v.*

7    *Brisbane Elementary School Dist.*, 55 Cal.2d 224, 233 (1961).

8                    *i.      Whether the provably false standard applies*

9            Counterdefendants assert that Counterclaimants have the burden of establishing that the

10   statements are provably false.  (ECF No. 261 at 10–12.)  In ordinary circumstances, the

11   "defendant must bear the burden of truth."  *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S.

12   767, 776 (1986); *see also Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364 (1996) (finding

13   that first amendment prohibits applying common law presumption of falsity when the allegedly

14   defamatory statements relate to a matter of public interest).  However when the allegedly

15   defamatory statements involve a public official or public figure, or matter of public concern, the

16   burden shifts to the plaintiff to prove the falsity of the statements.  *See Nazim*, 47 Cal. App. 4th at

17   373 (requiring the plaintiff to prove falsity on a matter of public concern even when the case

18   involves non-media defendants); *Philadelphia Newspapers*, 475 U.S. at 776 (requiring the

19   plaintiff to prove falsity on a matter of public concern when defendants are members of the

20   media).

21           Counterdefendants cite *Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364 (1996), in

22   support of their argument that Counterclaimants must demonstrate that the statements are false.

23   In *Nizam*, the court found that in cases involving matters of public concern or public officials, the

24   burden is on the plaintiff to prove falsity of the allegedly defamatory statements.  *Id.* at 373–74.

25   As discussed above the Court finds that Sisemore-Hester and Jacobs are not public officials.

26           Furthermore, Counterdefendants do not discuss or offer evidence in support of a

27   conclusion that the statements involve a matter of public concern.  Counterdefendants simply

28   contend that the statements are not provably false.  (ECF No. 261 at 11.)  This contention is

1    wholly lacking.  Counterdefendants bear the initial burden of demonstrating that there is no

2    triable issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Here, since

3    Counterdefendants have not met their burden of demonstrating that the statements involve a

4    matter of public concern, they must show that the statements are true.  Therefore,

5    Counterclaimants do not have the burden of demonstrating that the statements are false.

6                    *ii.      Whether statements are matters of opinion*

7            Counterdefendants argue that M.A.F.'s statements constitute opinion on matters of public

8    concern.  (ECF No. 261 at 10.)  Counterdefendants assert that Counterclaimants cannot prevail as

9    a matter of law because M.A.F. supports her decisions by linking her readers to the complaint in

10   this action.  (ECF No. 261 at 11.)  Counterclaimants contend that there is a triable issue of fact as

11   to whether M.A.F. made "defamatory false statements of fact."  Counterclaimants point to

12   M.A.F.'s deposition in support of their conclusion to demonstrate that she admitted to making the

13   statements.  (*See* ECF No. 263 at 10–15.)

14           "The First Amendment places limits on the types of speech that can give rise to a

15   defamation action under state law."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 861 (9th Cir.

16   1999).  Among other protections, the First Amendment protects "statements of opinion on matters

17   of public concern that do not contain or imply a provable factual assertion."  *Underwager v.

18   Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).  In determining whether the statements are

19   protected opinions, the threshold question is "whether a reasonable factfinder could conclude that

20   the contested statement implies an assertion of objective fact."  *Unelko Corp. v. Rooney*, 912 F.2d

21   1049, 1053 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991).  If the answer is no, then First

22   Amendment protections apply.  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  "To

23   determine whether a statement implies a factual assertion, we examine the totality of the

24   circumstances in which it was made."  *Underwager*, 69 F.3d at 366.  Under the totality of the

25   circumstances test, the court first analyzes the language of the statement and then the context in

26   which the statement was made.  *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385

27   (Cal. Ct. App. 2004).

28           As to Exhibit E — the home page of the Autism Reform California website —

1    Counterdefendants argue that the allegedly libelous statements which describe "VMRC's

2    jurisdiction as 'illegal' and 'discriminatory'" are protected opinion because M.A.F. "provides a

3    link to the complaint in this action as a factual basis" for her opinion.  (ECF No. 261 at 11.)  An

4    opinion based on fully disclosed facts is actionable only if the underlying facts are themselves

5    false and defamatory.  *Standing Committee v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).  In

6    other words, the factual basis must be provably true.  *Franklin*, 116 Cal. App. 4th at 388.

7    However, the issue in determining whether the facts are provably true is not whether the

8    complaint made truthful assertions of fact, but whether the complaint existed and made the

9    assertions claimed.  *Id.*  Here, the complaint at issue does in fact exist as it is the complaint in this

10   action.  Furthermore, the Complaint asserts that VMRC's criteria is illegal and brings claims

11   against VMRC under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act,

12   and the Unruh Civil Rights Act.  (*See* ECF No. 1)  Visitors to the American Reform California

13   website were invited to read the complaint and determine for themselves whether they believed

14   VMRC's criteria are illegal and discriminatory.  Therefore, the language of the statements

15   suggests that the statements on the Home page were protected opinion.

16        The Court next determines the context in which the statements were made.  *Franklin*, 116

17   Cal. App. 4th at 385.  "The contextual analysis demands that the courts look at the nature and full

18   content of the communication and to the knowledge and understanding of the audience to whom

19   the publication was directed."  *Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 261

20   (1986).  Here, these statements were made in connection with an autism reform website.  Visitors

21   to this website likely understood the website to provide details on reform in autism treatments and

22   services.  The Home section of the website is dedicated to a "background history" and description

23   of the controversies leading the group to believe that reform in autism services is necessary.  (*See*

24   ECF No. 21 at 71–72.)  One such controversy is the case presently before this Court.  Based on

25   the background, visitors would see the transformation of the services provided and the reasons for

26   the statements regarding reform and conduct of parties involved in autism services.  Therefore,

27   reading the statements "in light of the whole scope and apparent object of the writer," supports

28   the Court's finding that the statements in Exhibit E are protected opinion.  *Baker*, 42 Cal.3d at

1    261 (citations omitted).   Accordingly, the Court GRANTS Counterdefendants' motion for

2    summary judgement as to counterclaim one for libel as to Exhibit E.

3          With respect to Exhibits F and G, — the Resource section of the Autism Reform

4    California website and the EIBT section of the Valley SNAFU website, respectively —

5    Counterdefendants similarly argue that M.A.F. linked to "the complaint along with other factual

6    details to substantiate her opinion."  (ECF No. 261 at 12.)   Above, Counterdefendants identify

7    the allegedly slanderous statements they argue are protected opinion.  However, here

8    Counterdefendants do not identify which statements are protected opinion in either Exhibit F or

9    Exhibit G.  As the Court noted in its previous order it cannot decide whether the statements are

10   matters of opinion when Counterdefendants do not identify which portions are opinion.  (ECF

11   No. 111 at 12.)  Accordingly, Counterdefendants have not met their burden of identifying the

12   deficiencies in the pleadings or depositions.  *Celotex*, 477 U.S. at 323.  Summary judgment is

13   DENIED as to counterclaim one for libel as to Exhibits F and G.

14                C.  Counterclaim 2: Slander

15         Counterdefendants argue that Counterclaimants cannot demonstrate a triable issue of fact

16   as to their slander claim.  (ECF No. 261 at 6–10.)  Counterdefendants assert that

17   Counterclaimants fail to identify statements made by M.A.F., that there is no evidence that

18   M.A.F. made any defamatory statements, and that the statements are not provably false.  (ECF

19   No. 261 at 7–9.)   Counterclaimants contend that M.A.F. admitted to making the statements at

20   issue in the RecordNet.com article.  (ECF No. 263 at 19.)  Counterclaimants further assert that

21   M.A.F. admitted to accusing VMRC of "developing a scheme to purposefully deny autistic

22   students access to autism services."  (ECF No. 263 at 19.)  Based on these statements,

23   Counterclaimants contend there is a triable issue of fact that should be left to the jury.  (ECF No.

24   263 at 19.)

25         To succeed on a claim for slander the plaintiff must establish "the intentional publication

26   of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which

27   causes special damages."  *Scott*, 495 F. Supp. 2d at 973.  A claim for slander mirrors a claim for

28   libel.  *Id.*  Therefore, the analysis concerning the provably false standard for libel similarly

1   applies to slander.  As stated above, the Court found that Counterdefendants bear the burden of

2   demonstrating that Counterclaimants are public officials who must demonstrate actual malice.

3   The Court found that Counterdefendants did not demonstrate that Counterclaimants are public

4   officials and failed to discuss whether Counterclaimants might be public figures or that the

5   statements regarded a matter of public concern.  Therefore, the Court rejected Counterdefendants'

6   argument that Counterclaimants must show actual malice to succeed on their counterclaim for

7   libel.  For these same reasons, the Court similarly DENIES Counterdefendants' motion for

8   summary judgment for the slander counterclaim as to Counterdefendants' argument that

9   Counterclaimants must demonstrate actual malice.  The Court turns to the Counterdefendants

10  other arguments.

11                              *i.*      *DeVelbiss Email*

12          The DeVelbiss email at issue is from the mother of a child notifying Sisemore-Hester that

13  VMRC was not welcome at her son's IEP meeting because she believes that there is no law that

14  requires VMRC to be present at the meeting in order for her child to receive Free Appropriate

15  Public Education ("FAPE").  (ECF No. 21 at 62.)  Counterdefendants argue that

16  Counterclaimants do not have any evidence to support a finding that M.A.F. made slanderous

17  statements to DeVelbiss which induced her to write the email.  (ECF No. 261 at 7.)  Furthermore,

18  Counterdefendants assert that the statement that VMRC would prevent a child from receiving

19  services is not defamatory *per se* and requires proof of actual damages.  (ECF No. 261 at 8.)

20  Counterdefendants do not identify which exhibit that statement originates from.

21                              a.   Sufficiency of Evidence that M.A.F. made the alleged statements to

22                                   DeVelbiss

23          Counterdefendants argue that there is "a dearth of evidence that . . . M.A.F. made any

24  defamatory statements to DeVelbiss."  (ECF No. 261 at 7.)  Counterdefendants draw attention to

25  statements in Sisemore-Hester's deposition to demonstrate that she was unable to identify

26  statements made by M.A.F. except as through an unknown third party.  (ECF No. 261 at 7.)

27  Counterclaimants assert that M.A.F. in her deposition admitted to making the statements

28  regarding VMRC attempting to deny autism services to children.  (ECF No. 263 at 19.)

1    In support of their argument, Counterdefendants cite to lines of Sisemore-Hester's

2    deposition in which she states that she believes that M.A.F. told DeVelbiss that VMRC plans to

3    deny DeVelbiss's child intensive ABA services.  (ECF No. 261 at 8.)  Sisemore-Hester goes on to

4    state that she based her belief of M.A.F.'s involvement on information she obtained from a

5    service coordinator.  (Deposition of Tara-Sisemore-Hester at 90:12–91:9.)  Counterdefendants

6    argue that these statements demonstrate that Counterclaimants have no evidence that M.A.F.

7    made the allegedly slanderous statements that prompted DeVelbiss to write the email to

8    Sisemore-Hester.  (ECF No. 261 at 8.)

9    The moving party bears the initial burden of demonstrating that there is no genuine

10   dispute of material facts such that summary judgment should be entered in its favor.  *Celotex*, 477

11   U.S. at 323.  In a slander action, identification of the speaker is an essential element of the claim.

12   Here, Counterdefendants argue that Counterclaimants cannot prove that M.A.F. made the

13   allegedly slanderous statements.  However, the evidence presented by Counterdefendants does

14   not demonstrate that there is no genuine issue of material fact.  Quite the opposite, Sisemore-

15   Hester's statements call into dispute whether M.A.F. told DeVelbiss that VMRC would deny her

16   child intensive ABA services.  This is a question of fact in dispute that a jury must determine at

17   trial.  Accordingly, Counterdefendants' motion for summary judgment on the ground that M.A.F.

18   is not identified as the speaker is DENIED.

19                              b.   Slander *per se*

20   Counterdefendants assert that the statement "VMRC would prevent a child from receiving

21   services" is not defamatory *per se*.  (ECF No. 261 at 8.)  An allegedly slanderous statement is

22   considered slander *per se* if the statement : (1) charges the person with a crime or having been

23   indicted, convicted or punished for a crime; (2) alleges he has an infectious, contagious or

24   loathsome disease; (3) "tends directly to injure him in respect to his office, profession, trade or

25   business, either by imputing to him general disqualification in those respects which the office or

26   other occupation peculiarly requires, or by imputing something with reference to his office,

27   profession, trade, or business that has a natural tendency to lessen its profits"; or (4) asserts

28   impotence or lack of chastity.  Cal. Civil Code § 46.  To succeed on a slander claim when the

1    allegedly slanderous statement does not fit into the first four subsections of California Civil Code

2    § 46, the plaintiff must prove actual damages.  *Regalia v. Nethercutt Collection*, 172 Cal. App.

3    4th 361, 367 (Cal. Ct. App. 2009).

4         First, Counterdefendants contend that the allegedly slanderous statement does not charge

5    Counterclaimants with a crime.  (ECF No. 261 at 8.)  However, Counterdefendants do not provide

6    any support or analysis as to why the statement is not a crime.  Therefore, Counterdefendants

7    have failed to meet their initial burden.

8         Next, Counterdefendants assert that the statement does not injure VMRC's profits because

9    it is a non-profit corporation.  (ECF No. 261 at 8.)  Counterdefendants cite Sisemore-Hester's

10   deposition where she identified only one consumer by name as having withdrawn from VMRC,

11   A.N. a party to this lawsuit.  (ECF No. 261 at 8, (citing Deposition of Tara Sisemore-Hester at

12   91:20–94:1).)  Counterclaimants do not discuss Counterdefendants' arguments.  The only

13   mention of slander *per se* is in Counterclaimants' proffered legal standard for slander.

14   Counterclaimants define slander as a false and unprivileged statement "which . . . tends to directly

15   inure [sic] a person's business or professional reputation, or which cause, by natural

16   consequences, actual damage."  (ECF No. 263 at 19, (citing Cal. Civ. Code § 46).)

17        The Court does not read Counterdefendants' arguments as asserting that the statements do

18   not injure Counterclaimants reputation or profession.  Counterdefendants focus solely on the

19   amount of loss and damages VMRC, Sisemore-Hester, and Jacobs have suffered.  (ECF No. 261

20   at 8–9.)  However, there are two possible ways to find slander *per se* from subsection (3) of

21   California Civil Code § 46.  The party may be directly injured in "respect to his office,

22   profession, trade or business *either* by [(1)] imputing to him a general disqualification in those

23   respects which the office or other occupation peculiarly requires; or [(2)] by imputing something

24   with reference to his office, profession, trade, or business that has a natural tendency to lessen its

25   profits."  Cal. Civ. Code § 46(3).  Counterdefendants do not address the first possible means of

26   finding slander *per se* with respect to business reputations.  There is still a possibility that

27   Counterclaimants can establish at trial that the statements "impute[] to [the party] a general

28   disqualification in those respects which the office or other occupation peculiarly requires."  *Id.*

1    Because Counterdefendants do not address the other possible means of establishing slander *per*

2    *se*, a genuine issue of material fact may exist.  The parties have not provided enough argument for

3    the Court to make this determination.  Accordingly, Counterdefendants fail to meet their burden

4    in demonstrating that there is no dispute of genuine issue of material fact as to the DeVelbiss

5    email.  Summary judgment is, therefore, DENIED on the above stated grounds.

6                      *ii.      Examiner.com and Recordnet.com articles*

7            Counterdefendants argue that Counterclaimants cannot bring a slander claim based on the

8    Examiner.com article because Counterclaimants cannot prove that M.A.F. made the statements.

9    (ECF No. 261 at 9.)  Counterdefendants point out that the article attributed the allegedly

10   slanderous statements to a "Laura Jones," a pseudonym for a mother who wished to remain

11   anonymous.  (ECF No. 261 at 9.)  Counterdefendants argue that "there is no evidence that M.A.F.

12   is Laura Jones."  (ECF No. 261 at 9.)  Counterclaimants do not offer any evidence to dispute this

13   argument.  Instead, Counterclaimants seek to maintain their slander claim based on the sweeping

14   statement that M.A.F. admitted to making the statement that VMRC developed a scheme to

15   purposefully deny autistic students intensive ABA services.  (ECF No. 263 at 19.)

16           Because Counterclaimants bear the burden of proof at trial on this issue,

17   Counterdefendants can carry their burden at the summary judgment stage by showing, through

18   argument, that Counterclaimants do not have enough evidence to establish that M.A.F. is Laura

19   Jones.  *See Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1261 (9th Cir. 2016) (citing

20   *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

21   Counterdefendants state that "there is no evidence that M.A.F. is Laura Jones."  (ECF No. 261 at

22   9.)  While sparse, Counterdefendants are permitted to use arguments to meet their burden.  *Nissan*

23   *Fire*, 210 F.3d at 1102 (permitting moving party to show through argument that there is

24   insufficient evidence for the non-moving party to succeed at trial).  Therefore, the burden shifts to

25   Counterclaimants to produce some evidence that a triable issue of fact exists such that this claim

26   should be preserved for trial.  *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1188

27   (9th Cir. 2016).  Counterclaimants have produced no evidence to refute Counterdefendants'

28   argument and in fact fail to address the argument at all.  Since Counterclaimants have not met

1    their burden to produce evidence to support their claim, there is no need for a trial on this issue.

2    *See Nissan Fire*, 210 F.3d at 1103.  Accordingly, summary judgment is GRANTED as to the

3    allegedly slanderous statements in the Examiner.com article.

4              As to the Recordnet.com article, Counterdefendants argue that the statement attributed to

5    M.A.F. that "M.A.F. agreed, adding that special education should be tailored to a child's needs,

6    and not to an agency's criteria," does not fit into any of the categories for slander *per se*.  (ECF

7    No. 261 at 9.)  Counterdefendants further assert that Counterclaimants cannot show actual

8    damages.  (ECF No. 261 at 9.)  Counterclaimants do not respond to this argue and offer no

9    evidence in support of finding that the statement is slander *per se*.  As an initial matter,

10   Counterdefendants only discuss one statement attributed to M.A.F. in connection with the

11   Recordnet.com article.  However, upon review the Court notes that the article actually attributes

12   four quotes or generalizations to M.A.F.  Counterdefendants do not raise any arguments for the

13   other three statements.  Therefore, the Court takes this to mean that Counterdefendants do not

14   seek summary judgment for those statements and only address the above quoted statement.

15             As discussed above, when the moving party does not bear the burden at trial, an argument

16   will suffice to meet its burden.  *See Coomes*, 816 F.3d at 1261.   The burden then shifts to the

17   non-moving party to provide some evidence that there is a triable issue of material fact.

18   *Friedman*, 833 F.3d at 1188.  Again, Counterdefendants have made an argument, scant though it

19   may be, that Counterclaimants cannot prove that this statement amounts to slander *per se*.

20   Counterclaimants fail to respond to this argument or present evidence to suggest that a triable

21   issue at least exists such that this issue should go to trial.  Accordingly, the Court finds that

22   Counterclaimants fail to meet their burden and summary judgment is similarly GRANTED as to

23   the Recordnet.com article with respect to the above mentioned statement.

24         **IV.    CONCLUSION**

25             For the above state reasons the Court hereby GRANTS Summary Judgment in favor of

26   Counterdefendants on the counterclaim for libel as to Exhibit E, and the counterclaim for slander

27   with respect to the Examiner.com article and the identified statement in the Recordnet.com

28   article.  The Court herby DENIES Counterdefendants' Motion for Summary Judgment on all

1  other grounds.  The parties are hereby ordered to file a Joint Status Report within thirty (30) days

2  of this Order indicating their readiness to proceed to trial on the counterclaims and proposing trial

3  dates.

4          IT IS SO ORDERED.

5

6  Dated: March 31, 2017

7

8                                                      _____
                                                       Troy L. Nunley
9                                                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18