UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z.F., a minor, by and through his parents M.A.F. and J.F. and M.A.F. and J.F. individually; L.H., and J.H., minors by and through their parents J.A. and J.R.H. and J.A. and J.R.H. individually; A.N, a minor by and through his parents , G.N. and M.R. and G.N. and M.R. individually,<br><br>Plaintiffs,<br><br>v.<br><br>RIPON UNIFIED SCHOOL DISTRICT, RIPON UNIFIED SCHOOL DISTRICT BOARD OF TRUSTEES, SAN JOAQUIN COUNTRY OFFICE OF EDUCATION, VALLEY MOUNTAIN REGIONAL CENTER, MODESTO CITY SCHOOLS, MODESTO CITY SCHOOLS BOARD OF EDUCATION, RICHARD JACOBS, Executive Director of VMRC, in his official and individual capacity, TARA SISEMORE-HESTER, Coordinator for Autism Services for VMRC, in her official and individual capacity, VIRGINIA JOHNSON, Director of Modesto City Schools SELPA, in her official and individual capacity, SUE SWARTZLANDER, Program Director for Modesto City Schools, in her official and individual capacity, and DOES 1-200 ,<br><br>Defendants. | No. 2:10-cv-00523-TLN-CKD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

1

| | |
|---|---|
| 1 | VALLEY MOUNTAIN REGIONAL CENTER, RICHARD JACOBS, and |
| 2 | TARA SISEMORE-HESTER, |
| 3 | Counterclaimants, |
| 4 | v. |
| 5 | M.A.F. and SPECIAL NEEDS ADVOCATES FOR UNDERSTANDING, |
| 6 | |
| 7 | Counterdefendants. |

This matter is before the Court on two separate motions for summary judgment. Defendant Valley Mountain Regional Center ("VMRC") filed a motion for summary judgment against Plaintiffs Z.F., M.A.F., J.F., L.H., J.H., J.A., J.R.H., A.N, G.N., and M.R. (jointly "Plaintiffs"). (ECF No. 242.) Likewise, Defendants Ripon Unified School District ("RUSD"), Ripon Unified School District Board of Trustees, and San Joaquin County Office of Education filed a separate motion for summary judgment against Plaintiffs Z.F., M.A.F., J.F., A.N., G.N., and M.R. (ECF No. 250.) Plaintiffs oppose both motions. (ECF Nos. 266 & 264.) Moving Defendants filed replies. (ECF Nos. 275 & 274.) Having carefully considered the arguments raised by the parties and for the reasons set forth below, the Court hereby GRANTS both Motions for Summary Judgment (ECF Nos. 242 & 250).

## I. FACTUAL BACKGROUND

The claims at issue in the instant action arise from alleged discrimination in the special education context. The Individuals with Disabilities Education Act ("IDEA") was created to provide full educational opportunities to disabled children and to ensure the protection of the rights of disabled children and their parents. *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 523 (2007). The ultimate goal of the IDEA is to provide free appropriate public education ("FAPE"), tailored to the individual needs of the child by means of an Individual Education Program ("IEP"). *Id.* at 524. In the districts at issue in this action, the district and its representatives, the child and its parents, and the regional center participated in the IEP meetings.

While the schools were required to fund FAPE, VMRC could voluntarily aid in funding services through Early Intensive Behavioral Treatment ("EIBT"). (ECF No. 242 at 9.) The EIBT helped fund an intensive treatment called Applied Behavioral Analysis ("ABA"). (ECF No. 242 at 9.) VMRC used a document called EIBT Programs, Procedures, and Guidelines ("PP&G") to help it effectively implement funding under the EIBT for ABA services. (ECF No. 242 at 17.) The instant action deals with the application of the EIBT to Plaintiffs.

### A. Role of VMRC

VMRC is a private nonprofit organization established under the Lanterman Developmental Disabilities Services Act. Cal. Welf. & Inst. Code § 4500 *et seq.* The Lanterman Act is designed to facilitate access to various support services for California's developmentally disabled residents. (Pltfs.' Resp. to Defs.' Separate Statement of Undisputed Facts, ECF No. 267 ¶ 1.) The Lanterman Act requires VMRC to fund services for autistic persons under the age of three. (ECF No. 267 ¶ 6.) VMRC is not required to fund services for persons over the age of three, but does voluntarily co-fund certain educational placements for children over three. (ECF No. 267 ¶ 13.)

### A. Plaintiff Z.F.

Z.F. claims he was denied intensive ABA services prior to May 2009. (Pltfs.' Resp. to Defs.' separate statement of undisputed facts, ECF No. 265 ¶ 1.) Z.F. was diagnosed with autism on or about July 14, 2005. (ECF No. 267 ¶ 46.) On November 5, 2005, Z.F.'s parents, M.A.F. and J.F., attended the first IEP meeting in Ripon. (ECF No. 267 ¶ 47.) During the meeting, RUSD made two offers of FAPE for Z.F. (ECF No. 267 ¶ 49.) RUSD offered a placement at the McFall autism preschool ABA program with a parent training component and a school program of 30 hours of intensive training per week or an intensive ABA EIBT home program for 35–40 hours per week. (ECF No. 267 ¶ 49.) M.A.F and J.F. forewent the second option and enrolled Z.F. in McFall Special Day Class. (ECF No. 267 ¶ 51.)

In May 2006, M.A.F. and J.F. met with RUSD for another IEP meeting and RUSD offered Z.F. 35–40 hours per week of intensive ABA services at RUSD's sole expense. (ECF No. 267 ¶ 55.) RUSD provided Z.F. with the agreed upon in-home ABA services for the 2006–2007

3

school year. (ECF No. 267 ¶ 57.) On January 30, 2008, M.A.F. and J.F. filed a Request for Due Process and Mediation with the Office of Administrative Hearings ("OAH"). (ECF No. 267 ¶ 58.) In their request, M.A.F. and J.F. argued that RUSD failed to provide Z.F. with an appropriate education program. (ECF No. 114 ¶ 73.) On June 6, 2008, M.A.F. and J.F. entered into a settlement agreement with Ripon Unified School District, San Joaquin County Office of Education, and San Joaquin Special Education Local Plan Area ("SELPA"). (ECF No. 267 ¶ 59.)

### B. Plaintiffs J.H and L.H.

Twin boys J.H. and L.H. relocated to the Modesto area from Santa Cruz. (ECF No. 267 ¶ 63.) On September 10, 2007, IEP meetings were held for both children and the children were each offered a 30-day interim placement in a Special Day Class at Garrison Elementary for 30 hours a week. (ECF No. 267 ¶¶ 63–64.) Their parents, J.A. and J.R.H., consented to the placement. (ECF No. 267 ¶ 64.) At subsequent IEP meetings, Modesto School District continued to offer placement at Garrison Special Day Class for both children. (ECF No. 267 ¶ 66.) J.A. and J.R.H. also filed a request for Due Process and Mediation with the OAH on behalf of their children alleging that the 4-way/EIBT agreement had denied them FAPE. (ECF No. 114 ¶ 67.) J.H. and L.H. received intensive ABA placement following the OAH ruling. (ECF No. 267 ¶ 71.) The Administrative Law Judge ("ALJ") awarded J.H. and L.H. compensatory services paid for by Modesto School District. (ECF No. 267 ¶ 72.) Since the completion of the compensatory services, J.H. and L.H.'s placements were changed through the IEP process with their parents' consent. (ECF No. 267 ¶ 76.)

### C. Plaintiff A.N.

A.N.'s mother, M.R. attended an IEP meeting for A.N. on August 9, 2007. (ECF No. 267 ¶ 82.) At the meeting, M.R. stated she was pleased with A.N.'s progress and approved continued placement at McFall. (ECF No. 267 ¶¶ 83–84.) At a September 27, 2007, IEP meeting, the IEP team agreed to A.N.'s continued placement at McFall. (ECF No. 267 ¶ 89.) M.R. filed a Request for Due process with the OAH on March 24, 2009, challenging the placement decision made at the September IEP meeting. (ECF No. 267 ¶ 91.) In the request, M.R. argued that RUSD failed to provide A.N. with an appropriate education program. (ECF No. 114 ¶ 73.) M.R. voluntarily

settled the claims against Modesto School District on April 30, 2009. (ECF No. 267 ¶ 92.) M.R. has consented to all educational placements following the OAH settlement. (ECF No. 267 ¶ 93.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

Over the course of this litigation, the Court has dismissed some of Plaintiffs' claims and the parties have voluntarily settled others. The remaining claims at issue in the instant motions for summary judgment are as follows. Plaintiffs Z.F., A.N., and their respective parents seek compensatory damages against RUSD Defendants under Section 504 of the Rehabilitation Act, 29 U.S.C. § 749 *et seq.*, and injunctive relief against RUSD Defendants under Title II of the Americans with Disabilities Act, ("ADA") 42 U.S.C § 12131 *et seq.* All Plaintiffs seek compensatory damages against VMRC under Section 504 of the Rehabilitation Act and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* (*See* ECF No. 114.)

In its motion for summary judgment, VMRC asserts that Plaintiffs failed to exhaust their

administrative remedies against VMRC. VMRC further argues that Plaintiffs' claim under Section 504 is without merit because VMRC was under no legal duty to pay for Plaintiffs' placements, that Plaintiffs cannot prove they were discriminated against "solely because of" their disability, and that Plaintiffs cannot establish bad faith or gross misjudgment by VMRC. VMRC contends that the Plaintiffs' claim under the Unruh Act is equally without merit because Plaintiffs cannot prove intentional discrimination. In the alternative, VMRC seeks partial summary judgment with respect to Plaintiffs' claims for declaratory and injunctive relief. (ECF No. 242 at 20–35.)

Defendants RUSD, RUSD Board of Trustees, and San Joaquin County Office of Education (jointly "RUSD Defendants") seek summary judgment against Z.F., A.N., and their respective parents. RUSD Defendants assert that these Plaintiffs released their Section 504 and ADA claims against RUSD Defendants through settlement agreements reached at the OAH proceedings. RUSD Defendants contend that Plaintiffs have no evidence that the 4-way or PP&G agreements are improper barriers to ABA placements. Lastly, RUSD Defendants echo VMRC's claims that Plaintiffs have no evidence of bad faith or gross misjudgment for their Section 504 claim.

### B. Evidentiary Issues

The briefings raise two evidentiary issues that the Court will now address. First, VMRC objects to most of Plaintiffs' evidence filed in support of their opposition. (*See* ECF No. 275–1.) Plaintiffs filed a request for judicial notice (ECF No. 268) that they seek to use in opposition to both motions for summary judgment. Plaintiffs also filed a multitude of other declarations. (*See* ECF Nos. 269, 270, 271, & 272.) VMRC filed forty-four objections to Plaintiffs' proffered evidence on various grounds. (ECF No. 275–1.) These objections include the argument that the declaration of Shirley Nutt should not be included in its entirety because Shirley Nutt lacks personal knowledge and her statements are irrelevant. (ECF No. 275–1 at 9–12.) VMRC does not differentiate between the parts of the declarations that Plaintiffs use in support of their opposition and those portions which are not used. RUSD Defendants filed seven objections, but focus only on those paragraphs Plaintiffs cite as evidence in their opposition. (ECF No. 274–2.)

The Court does not address each evidentiary objection separately because doing so is unnecessary to resolve the instant motions. *See Wynes v. Kaiser Permanente Hosps.*, 936 F. Supp. 2d 1171, 1180 n.8 (E.D. Cal. 2013). Furthermore, much of VMRC's objections revolve around the relevance of the submitted material. To the extent that VMRC and the other moving Defendants object to the declarations on the basis of irrelevance or speculation, such objections are "more fruitfully and efficiently analyzed against the summary judgment standard itself." *Pinder v. Employment Development Department*, No. 2:13-cv-00817-TLN-DB, 2017 WL 56863, at *7 (E.D. Cal. Jan. 5, 2017) (citing *Burch v. Regents of Univ. Cal.*, 433 F. Supp. 2d 1110. 1123 (E.D. Cal. 2006)). With respect to the declaration of Shirley Nutt, VMRC's irrelevance arguments are likewise dispensed with.

Second, the Court notes a lack of factual support and citations to the evidence submitted in support of the parties' arguments. Plaintiffs' disputed facts offer little guidance to the Court on where to find the necessary evidence to support Plaintiffs' arguments. In most instances, Plaintiffs merely state the title of the exhibit as if that is sufficient to point the Court to the information necessary to dispute Defendants' facts. (*See* ECF No. 267 at ¶ 33 "S.N. Dec. at ¶ 7; RJN at Ex. B, Class Dec. of J.A. at Ex. B…") The nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "The Court is not obliged to 'scour the record in search of a genuine issue of triable fact.'" *Leramo v. Premier Anesthesia Medical Group*, No. CV F 09-2083 LJO JTL, 2011 WL 2680837, at *9 (E.D. Cal. July 8, 2011) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Therefore, the Court limits its review to the parts of the record specifically referenced by Plaintiffs, which are supported by the evidence and cited with sufficient specificity. The Court will not read an entire exhibit in the hope of finding language that supports Plaintiffs' conclusions.

### C. Plaintiffs' Exhaustion of Administrative Remedies

VMRC argues that Plaintiffs have not exhausted their administrative remedies and thus their claims against VMRC should be dismissed in full. (ECF No. 242 at 29.) VMRC contends that Plaintiffs should have sought administrative relief against it in a fair hearing procedure under

the Lanterman act. (ECF No. 242 at 29.) Plaintiffs assert that they never had cause or standing to request a fair hearing against VMRC. (ECF No. 266 at 14.) VMRC counters that Plaintiffs' statement regarding cause and standing is an admission that they cannot bring any claims against VMRC. (ECF No. 275 at 4.) However, VMRC's contention contorts the fair hearing requirement and Plaintiffs' response.

Under the Individuals with Disabilities Education Act ("IDEA"), a plaintiff must exhaust administrative remedies before bringing a civil action under Section 504 or the ADA. 28 U.S.C. § 1451(l). "It is well established that a plaintiff may not circumvent this exhaustion requirement by tailoring the complaint to exclude specific relief available under the IDEA." *McElroy ex rel. McElroy v. Tracy Unified School Dist.*, No. 2:07-cv-00086-MCE-EFB, 2008 WL 4754831, at *5 (E.D. Cal. Oct. 29, 2008) (*citing Robb v. Bethel School Dist. No. 403*, 308 F.3d 1047, 1049 (9th Cir. 2002)). However, the statute only applies the IDEA to a "[s]tate educational agency, state agency, or local education agency." 28 U.S.C. § 1415(a). VMRC is a private non-profit agency, and therefore, is not a state agency or local educational agency under the statute. *See St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 171 (2d Cir. 2001) (holding that the IDEA does not create liability for private entities). Accordingly, as a private entity VMRC is not subject to the IDEA or its exhaustion requirements. Plaintiffs were not required or even able to bring VMRC before a fair hearing procedure. Therefore, VMRC's argument that Plaintiffs were required to exhaust administrative remedies against it is without merit.

### D. Release of Claims Against RUSD Defendants Through Settlement Agreement

RUSD Defendants contend that Plaintiffs Z.F. and A.N. and their respective parents released RUSD Defendants from liability in this lawsuit in their settlement agreements at the OAH proceedings. (ECF No. 251 at 7.) The relevant clause from the settlement agreement reads:

> "[Respondents] are generally aware that [Student] and his Parents are named plaintiffs in a pending class action in federal court and acknowledge that this settlement does not settle the claims asserted in the federal action, <u>to the extent that the federal claims rely on a different cause of action and seek relief that is not available at the OAH or under the IDEA, or is not compensable at OAH or under the IDEA</u>."

(ECF No. 257–4, Ex. 4 at 84.) (emphasis added)  Plaintiffs assert that the language of the settlement does not preclude the instant action because "OAH has no jurisdiction to address claims for monetary damages or discrimination claims under Section 504 or Unruh."[1]  (ECF No. 264 at 3.)  RUSD Defendants contend that Plaintiffs miss the point of the clause and that relabeling the claims as Section 504 or ADA does not mean that the relief sought in the instant action is not available at the OAH or under the IDEA.[2]  (ECF No. 274 at 4.)  RUSD Defendants further contend that the OAH is permitted to award a wide variety of relief including injunctive relief and monetary damages.  (ECF No. 251 at 11.)

RUSD Defendants claim that the intent of the clause was to prevent claims similar to those brought in the instant action.  However, they do not assert that the phrase is ambiguous or the terms should be awarded special meaning.  Absent evidence that the parties intended a special usage, words used in a contract should be interpreted in their "ordinary and popular sense."  Cal. Civ. Code § 1644.  The Court interprets the phrase to have its ordinary meaning.  When given its ordinary meaning, the clause requires first that Plaintiffs demonstrate that the causes of action are different from those brought at the OAH proceeding and second that the relief sought is not available or not compensable under the OAH or IDEA.  RUSD Defendants state that the analysis of this argument revolves around what type of relief Plaintiffs seek in the instant action and the type of relief "available/compensable" at the OAH or under the IDEA.  (ECF No. 251 at 9.)  RUSD Defendants do not discuss whether the causes of action are different and thus, concede this point.  Therefore, the Court turns to whether the relief at issue in the instant action is available or compensable under OAH or the IDEA.

Plaintiffs seek injunctive relief on their ADA claim under Title II.  (*See* ECF No. 114 ¶ 90.)  RUSD Defendants assert that "injunctive relief is clearly an available remedy under the IDEA."  (ECF No. 251 at 12.)  Plaintiffs do not respond to this argument.  In fact, Plaintiffs do not mention either the ADA or injunctive relief in response to RUSD Defendants' argument.

---

[1] Plaintiffs assert claims under Section 504 and the ADA against RUSD Defendants.  Plaintiffs do not assert an Unruh claim against RUSD Defendants.  (*See* ECF No. 114 at 22–26.)

[2] The Court finds below that the Plaintiffs have not met their burden on the Section 504 claim.  *See, infra*, section III. D.  Therefore, the Court focuses this section solely on Plaintiffs' ADA claim against RUSD Defendants.

Plaintiffs focus solely on whether compensatory damages are available at the OAH or under the IDEA. (*See* ECF No. 264 at 3–4.) In any event, the Court agrees with RUSD Defendants. The Ninth Circuit has stated that "injunctive relief is available under the IDEA" and is ordinarily the remedy under the IDEA. *Mark H. v. Lemahieu*, 513 F.3d 922, 929 (9th Cir. 2008); *see also Taylor v. Honig*, 910 F.2d 627, 628 (9th Cir. 1990) (stating that "injunctive or other prospective relief is ordinarily the remedy under the [predecessor to the IDEA]"). The injunctive relief that Plaintiffs seek was available at the OAH and compensable under the IDEA and thus, Plaintiffs' claim against RUSD Defendants under the ADA was waived by the settlement agreement. Accordingly, the Court GRANTS summary judgment on Plaintiffs ADA claim against RUSD Defendants.

E. Section 504 Claim Against RUSD Defendants and VMRC

In order to obtain relief under Section 504, a plaintiff must show (1) that he was disabled within the meaning of the act, (2) that he is "otherwise" qualified for the program he seeks to enter, (3) that he was denied the services "solely by reason of his handicap," and (4) that the program in question receives federal financial assistance. *Dempsey ex rel Dempsey v. Ladd*, 840 F.2d 638, 640 (9th Cir. 1987). A plaintiff seeking monetary damages under Section 504 must demonstrate a *mens rea* of "intentional discrimination," which may be satisfied by a showing of deliberate indifference. *Duvall v. County of Kitsap*, 260 F. 3d 1124, 1138 (9th Cir. 2001). The parties do not dispute elements one, two, or four. Thus, the only remaining issue relates to element three. VMRC and RUSD Defendants dispute whether the children were denied services solely by reason of their handicap and whether Plaintiffs can demonstrate a triable issue of fact as to intentional discrimination.

VMRC and RUSD Defendants cite to an Eastern District case for the proposition that "[p]laintiffs bringing § 504 claims in the special education context must show that the educational decisions relating to the student were so inappropriate as to constitute either bad faith or gross misjudgment." *Alex G. ex rel Dr. Steven G. v. Board of Trustees of Davis Joint Unified School Dist.*, 387 F. Supp. 2d 1119, 1124 (E.D. Cal. 2005); *see also N.L. v. Knox County Schs.*, 315 F.3d 688, 695–96 (6th Cir. 2003) ("To prove discrimination in the education context, courts have held

that something more than a simple failure to provide a free appropriate public education must be shown."). Plaintiffs argue that the *Alex G.* case acknowledges that the deliberate indifference standard applies under the circumstances in this case. (ECF No. 266 at 21.) However, the Court need not decide which is the applicable standard in this case because Plaintiffs have not even satisfied the less stringent deliberate indifference standard.

To satisfy the deliberate indifferent standard, a plaintiff must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated; and (2) failure to act despite that knowledge. *Duval v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011). Instead, deliberate indifference requires a "deliberate choice, rather than negligence or bureaucratic inaction." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009).

When Plaintiffs bear the burden at trial, VMRC and RUSD Defendants can carry their burden on summary judgment by showing, through argument, that Plaintiffs do not have enough evidence to establish intentional discrimination. *See Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1261 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). The burden then shifts to Plaintiffs to produce some evidence that a triable issue of fact exists such that their Section 504 claim should be preserved for trial. *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016). In attempting to establish the existence of a factual dispute, Plaintiff "is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists." Fed. R. Civ. P. 56(c). "Bare assertions of a legal conclusion, not supported by any other specific facts showing that there is a genuine issue for trial" are insufficient to raise a genuine issue of material fact. *Bader v. N. Line Layer, Inc.*, 503 F.3d 813, 820 n.4 (9th Cir. 2007).

VMRC and RUSD Defendants argue that Plaintiffs cannot establish a Section 504 claim because they have failed to present sufficient evidence from which a fact finder could conclude that the required *mens rea* is met. (ECF No. 251 at 20–21; ECF No. 242 at 39–40.) In response

to VMRC, Plaintiffs offer nothing more than the statement that "Plaintiffs have established at least a genuine issue of material fact that waitlists and arbitrary criteria put in place for students who are acknowledged to required [sic] intensive ABA services is an act of deliberate indifference." (ECF No. 266 at 21.)  Plaintiffs do not cite to any part of the record in support of this statement.  In the opposition to RUSD Defendants' motion, Plaintiffs assert that they "have submitted evidence that the EIBT program is set up as a barrier to the receipt of services by children diagnosed with Autism. (Dec. of Shirley Nutt; RJN at Ex. E-H.)".  (ECF No. 264 at 5.)  Plaintiffs' statement that waitlists and arbitrary criteria are acts of deliberate indifference amount to nothing more than a legal conclusion.  In order to prove deliberate indifference, Plaintiffs must demonstrate Defendants had knowledge that a federally protected right was likely to be violated and a failure to act despite that knowledge.  *Duval*, 260 F.3d at 1139.  Plaintiffs have failed to present arguments as to either element.  Plaintiffs state that "[u]sing eligibility criteria that might screen out qualified people with disabilities is a violation of federal law.  34 C.F.R. § 104.4(b)(vii)(4)."  (ECF No. 266 at 21.)  Yet, Plaintiffs do not assert how this law indicates knowledge or failure to act on the part of Defendants.

The burden is on Plaintiffs, not the Court, to present evidence which demonstrates a triable issue of fact as to whether Defendants intended to discriminate against Plaintiffs.  *See Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001) ("A judge is the impartial umpire of legal battles, not a [party's] attorney. He is neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments.... [T]o the extent that [Defendant] failed to develop any additional argument[s] or provide any legal support for them, [it] has waived them.").  Mere legal conclusions and citations that fail to cite with specificity the portions of the record which present evidence are insufficient.

Moreover, the evidence Plaintiffs present in support of their conclusion adds nothing in the way of specific facts.  Plaintiffs do not cite specific portions of the declarations that support their argument that there is sufficient evidence that a finder of fact might conclude Defendants

acted with deliberate indifference.³ Nor do Plaintiffs identify how the EIBT, waitlist and arbitrary criteria, were applied specifically to these children such that their application amounts to deliberate indifference. Citing to the declarations as a whole does not cure Plaintiffs' insufficient arguments especially when Plaintiffs do not explain how the declarations support their "argument." "It is not [the Ninth Circuit's] task, or that of the district court, to scour the record in search of a genuine issue of triable fact. [The Court] rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995).

Accordingly, Plaintiffs have not met their burden to demonstrate a genuine issue of material fact as to intentional discrimination. Summary Judgment as to Plaintiffs' first cause of action, discrimination under Section 504 of the Rehabilitation Act, is GRANTED as to VMRC and RUSD Defendants.

### F. The Unruh Act Claim Against VMRC

VMRC argues that there is no triable issue of fact with respect to Plaintiffs' claim under the Unruh Act because Plaintiffs cannot demonstrate intentional discrimination. (ECF No. 242 at 40.) The extent of Plaintiffs' response to Defendants' argument is a single sentence: "For the reasons set forth above, Plaintiffs have established that Defendant VMRC was deliberately indifferent because harm to a federally protected right is substantially likely, and there was a failure to act upon that likelihood." (ECF No. 266 at 21.) As the Court discussed above, Plaintiffs failed to meet their burden on the issue of intentional discrimination for their Section 504 claim. In order to sustain a claim of discrimination under the Unruh Civil Rights Act, a plaintiff must demonstrate either a violation of the ADA or intentional discrimination.⁴ *Lamark v. Laiwalla*, No. Civ. 12–03034 WBS AC, 2013 WL 5703614, at *7 (E.D. Cal. Oct. 15, 2013). Plaintiffs' "argument" is simply a restatement of the law. *See Duvall v. County of Kitsap*, 260

---

³ Having reviewed the exhibits at issue, the Court notes that Plaintiffs refer to declarations made by parents who sought to be part of the original class action.

⁴ This Court dismissed Plaintiffs' claim against VMRC under Title III of the ADA. (ECF No. 135.) Accordingly, Plaintiffs' claim survives only if they can demonstrate intentional discrimination.

14

F.3d 1124, 1139 (9th Cir. 2001) ("Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood."). This argument is not only unavailing, but also insufficient to carry Plaintiffs' burden for their Unruh Act claim. Therefore, the Court GRANTS summary judgment for VMRC as to Plaintiffs' claim under the Unruh Act.

### IV. CONCLUSION

The Court notes that Plaintiffs' complaint raises serious issues that are personal and important to the Plaintiffs. However, Plaintiffs' Counsel's shotgun approach in response to Defendants' arguments is simply inadequate. The Court cannot overlook Plaintiffs' Counsel's failure to adequately respond to arguments raised by Defendants and it is not the Court's role to make arguments for the parties. Accordingly, the Court ORDERS as follows:

1. VMRC and RUSD Defendants' separate Motions for Summary Judgment (ECF Nos. 242 & 250) as to Plaintiffs' Section 504 claim are hereby GRANTED.
2. VMRC's Motion for Summary Judgment (ECF No. 242) as to Plaintiffs' Unruh Act claim is hereby GRANTED.
3. RUSD Defendants Motion for Summary Judgment (ECF No. 250) as to Plaintiffs' ADA claim is hereby GRANTED.

IT IS SO ORDERED.

Dated: May 5, 2017

Troy L. Nunley
United States District Judge

15